Filed 6/23/23 In re Nathan S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re NATHAN S., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiffs and Respondents, v. LUIS S. et al., Defendants and Appellants. | F084733 (Super. Ct. No. 15CEJ300014-3) **OPINION** |

-ooOoo-

APPEAL from orders of the Superior Court of Fresno County. Elizabeth Egan, Judge.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant, Luis S.

Brian Bitker, under appointment by the Court of Appeal, for Defendant and Appellant, Nicole H.

Daniel C. Cederborg, County Counsel, and Ashley N. McGuire, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

In this juvenile dependency case, then two-year-old Nathan S. was removed from the home of his father, Luis S. (father), and his stepmother/presumed mother, Nicole H., due to concerns for his safety resulting from ongoing domestic violence and father's substance abuse. Prior to disposition, Nathan was placed on an extended visit with his mother, noncustodial and nonoffending parent, Kay P., and his half siblings. The juvenile court took jurisdiction over Nathan (Welf. & Inst. Code,[1] § 300, subd. (b)(1)) and removed him from father and Nicole's physical custody (§ 361, subd. (c)). Following a subsequent "exit mediation," the juvenile court awarded sole physical and legal custody of Nathan to Kay and terminated jurisdiction.

Father and Nicole appeal from the dispositional and "exit" custody orders, contending (1) the evidence was insufficient to support the juvenile court's jurisdictional findings; (2) the evidence was insufficient to support the court's findings underlying its removal order; and (3) the juvenile court erred by granting sole legal custody to Kay in its exit order.

Finding no error, we affirm the juvenile court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND

**Prior History**

This family has a history of child welfare referrals and juvenile dependency proceedings. First, with regard to Nathan, in February 2019, he was removed from Kay when she tested positive for methamphetamine at the time of Nathan's birth. In August 2019, Nathan was adjudged a dependent of the juvenile court and father was granted sole legal and physical custody and dependency was dismissed.

In addition, Kay and several of Nathan's half siblings were involved in previous juvenile dependency cases. In 2015, Nathan's half sibling, A.P., was removed from Kay

---

**1**     All further undesignated statutory references are to the Welfare and Institutions Code.

2.

due to her substance abuse issues, was adjudged a dependent of the juvenile court, and Kay was ordered to participate in reunification services. A.P.'s father was ultimately granted sole legal and physical custody of A.P. In 2017, Kay tested positive for methamphetamine at the time her child, J.N., was born. J.N. was adjudged a dependent of the juvenile court, and Kay was bypassed for reunification services. Her parental rights were terminated as to J.N., and a plan of adoption was ordered. Finally, while Nathan's 2019 dependency case was active, in March 2019, his half siblings, C.P., J.P., D.N., and R.H., were removed from Kay due to Kay's drug use and poor living conditions. Kay was ordered to participate in reunification services including parenting services, substance abuse services, and mental health services. Kay was successful in reunifying with C.P., J.P., D.N., and R.H., and in June 2021, the dependency was dismissed.

With regard to father and Nicole, a referral was received in July 2021; it was reported father was verbally abusive toward Nicole and Nathan, there was only a walkway to navigate through the home due to piles of boxes, and there was dog feces and dog urine present throughout the home. It was further reported father threatened Nicole that if she called law enforcement, he would take Nathan away, and she would never see him again. Law enforcement and the Fresno County Department of Social Services (department) had responded to this referral, but "nothing happened" because Nicole and father refused to allow authorities into the home. Nicole would not disclose anything to the department. The reporting party was concerned Nathan was being exposed to emotional abuse in the home due to father yelling at Nicole, breaking objects, and punching holes in the walls. The referral was evaluated out.

**Present Proceedings**

The juvenile dependency proceeding underlying this appeal was initiated in December 2021, when law enforcement was called to father and Nicole's home because father was reported to be under the influence of narcotics and destroying the home by

throwing things while Nathan was present. Upon their arrival, law enforcement observed the home to be in "complete disarray." Father and Nicole had a history of domestic violence and law enforcement had been called out previously. Father was uncooperative and was "making weird grunting noises." Law enforcement and Nicole asked father to leave, but he refused. Nicole reported she was Nathan's "only care provider." Law enforcement proceeded to make a safety plan with Nicole for her to leave the home with Nathan and advised Nicole to seek a restraining order to keep Nathan safe and away from father. Law enforcement requested the department to follow up on the situation because they wanted Nicole not to have contact with father.

The following day, law enforcement received another call about a domestic disturbance with Nathan present in the home. Nicole reported she returned to the home because she needed clothes for Nathan. She reported father slashed her tires to prevent her from leaving. She further reported father is a "bum" who smokes marijuana and lays around all day, and that she was the primary caretaker of Nathan. Nicole did not trust father to take care of Nathan. Another referral was made to the department. Nathan was observed to be free of visible marks or bruises, clean, and dressed in age-appropriate clothing.

Law enforcement and the investigating social worker contacted father who appeared to be under the influence; he was unable to coherently answer the questions being asked of him. Father reported using marijuana every day in the morning, afternoon, and evening, but denied substance abuse issues. Father also denied mental health and domestic violence issues. He stated he and Nicole argued sometimes, but it was not domestic violence. He reported being frustrated with Nicole because she did not want to be a "responsible parent." Father later agreed to drug test and tested positive for cannabinoids.

On December 23, 2021, a hold was placed on Nathan and he was placed in foster care.

When the social worker contacted Kay, she denied having any knowledge of concerns for Nathan in father's care. She reported being clean from substances for two and a half to three years. She had not seen Nathan since father was granted custody but had thought about going back to court. She had been employed at the same place for two and a half years. Kay reported she was willing to do whatever it took to keep Nathan out of foster care. Kay agreed to drug test and tested negative for all substances.

A home visit was conducted of Kay's home, where she lived with four of Nathan's half siblings, her sister, her sister's husband and their children. The social worker found the home to meet minimum standards. Nathan's half siblings reported everything was going well in the home. Kay reported wanting Nathan returned to her care. Kay reported she wanted to be honest by saying she did not want anything to do with Nathan when he was born due to her drug use. Now that she was sober, however, she wanted to be in Nathan's life.

Nathan's care providers reported that Nathan had been talking about what happened prior to his removal and that father and Nicole argued and he saw a "cut around neck."

A team decision making (TDM) meeting was held, where father reported the information leading to the referrals was "hearsay," and Nathan was not home at the time of the incident. Father further denied being under the influence during the incident and reported he used marijuana once or twice a day for a medical condition, but it did not impact his ability to care for Nathan. Nicole denied having concerns for Nathan's safety in father's care and reported he did not "slash" her tires; rather, he let the air out of them. Nicole admitted to contacting law enforcement and did so because she did not want things to escalate. She denied having physical altercations and arguing in front of Nathan. Nicole considered herself the primary caregiver of Nathan and reported Nathan was never left alone with father when he was under the influence of marijuana.

5.

On December 28, 2021, the department filed a juvenile dependency petition on Nathan's behalf, alleging he came within the court's jurisdiction under section 300, subdivision (b)(1) due to father's inability to protect Nathan because of substance abuse and domestic violence issues.

At the detention hearing conducted on December 30, 2021, Kay requested placement as the noncustodial, nonoffending parent for disposition. Father requested immediate placement with Nicole asserting she was "the only mother that [Nathan has] ever known." Father stated he was willing to stay out of the home and start services. The department and Nathan's counsel objected to placement with Nicole based on her inability to comply with the initial safety plan she made with law enforcement.

The court denied father's request for immediate placement with Nicole, agreeing with the arguments of counsel and pointing out Nicole appeared to minimize father's safety concerns, as well as the domestic violence. The court granted the department discretion to assess Nicole, as well as Kay, for future placement. The court ordered Nathan detained from father. Father and Kay were ordered to be provided with supervised visitation, with the department having discretion to provide visitation with Nicole. The court ordered the department to provide father with parenting classes, a substance abuse assessment and recommended treatment, random drug testing, a mental health evaluation and recommended treatment, and a domestic violence assessment and recommended treatment.

Kay's home was assessed and found to be adequate with no safety concerns. Kay reported completing parenting classes and inpatient substance abuse treatment as part of her last dependency case. She reported being clean from methamphetamine, loving her life, and being happy with the changes she had made. She reported she was employed full-time as a manager and hoped to save enough money to obtain her own place for herself and her children. She was excited to build a bond with Nathan and had worked

6.

hard to change her behaviors for the benefit of her children and wanted to be a mother to Nathan.

On January 27, 2022, Nathan began an extended visit with Kay. The department performed bi-weekly home visits. Nathan was reported as adjusting well in Kay's care and described as being "content, happy, and energetic." Nathan was further observed to "love[] to explore, ride his scooter, play with his siblings" and to be very active in the home.

On February 15, 2022, Nicole was appointed counsel, and the department stated its intention to add her as an alleged mother on the petition.

On April 13, 2022, a first amended petition was filed, adding Nicole as an alleged mother and a jurisdictional allegation pertaining to her, in that Nathan was at risk of harm due to her history of domestic violence with father.[2]

---

[2]    The specific supporting facts alleged under section 300, subdivision (b)(1) read as follows:

> "Count (b-1): "[Father] has failed to provide Nathan [] with adequate care, supervision, and protection. On or about December 22, 2021, [father] was observed to be under the influence with [] Nathan in his care. In addition, [father] exposed Nathan to a hostile and unsafe environment of domestic violence with [Nicole]. It was reported [father] is violent, aggressive and throws items in the home with Nathan in his care. Furthermore, it was reported the home is in complete disarray and not safe for a child. There is substantial risk the child, Nathan [] will suffer serious physical harm or illness, in the care of [father].

> "Count (b-2): Nathan [] is at substantial risk of suffering serious physical harm and/or neglect in that [Nicole] has a history of ongoing domestic violence with [father]. It was reported [father] is violent, aggressive and throws items in the home with Nathan in his care. Furthermore, it was reported the home is in complete disarray and not safe for a child. There is substantial risk Nathan [] will suffer serious physical harm or illness, in the care of [Nicole]."

7.

The department's jurisdiction/disposition report indicated Kay had no criminal history. Father had a criminal history dating back to 2003, with several misdemeanors, including drug-related offenses and a conviction for battery against a spouse or former spouse (Pen. Code, § 243, subd. (e)(1)) from February 2016. Father also had a felony conviction for willful infliction of corporal injury against a spouse or cohabitant (Pen. Code, § 273.5) from March 2016.

Father and Nicole participated in supervised visits with Nathan. In early visits, they were observed to be preoccupied with checking Nathan for marks and bruises. They would bring clothes for Nathan to change into and use the opportunity to inspect his entire body. They were informed it was inappropriate and could cause trauma to Nathan, but they continued to do so. In March 2022, a positive visit was reported where father and Nicole were observed following the rules.

Father participated in voluntary services. He completed a parenting program with perfect attendance and an outpatient substance abuse program. He tested positive for THC in January and the beginning of February, but began testing negative for all substances on February 7, 2022, with no no-shows for a total of 31 consecutive negative tests documented prior to the jurisdiction/disposition hearing. He was referred to, participated in, and successfully discharged from mental health services with no concerns. He also participated in a domestic violence assessment and was referred to participate in a child abuse intervention course. He enrolled in the course, and as of July 11, 2022, had completed 21 sessions with no absences and no issues reported.

Nicole participated in random drug testing with mostly negative results and two positive results for creatinine, one in April 2022 and one in May 2022. In or about April 2022, father and Nicole reported to the social worker that they were an intact couple and lived together. It was reported Nicole "ha[d] not sought for assistance to address the concern of domestic violence in her relationship with father [and] ha[d] not taken accountability of the concerns regarding domestic violence." Nicole was

subsequently provided with domestic violence resources, and in May 2022, she completed a 52-session online domestic violence course, and in July 2022, completed a parenting course with perfect attendance.

In May 2022, at a child and family team meeting, it was agreed that father and Nicole would advance to unsupervised visits. At subsequent exchanges, the parents were observed to be cooperative, and Nathan appeared to be happy both with Kay and with father and Nicole.

Ahead of the jurisdiction/disposition hearing, the department's recommendation was that jurisdiction be taken over Nathan, he be removed from father and Nicole, the case proceed to an "exit mediation" to discuss a custody arrangement, and the dependency of Nathan be dismissed. It was reported Kay had been able to demonstrate protective measures and cared for Nathan appropriately. Nathan was doing well in Kay's care with no safety concerns.

At the jurisdiction/disposition hearing conducted on August 2, 2022, the department requested the juvenile court sustain the juvenile dependency petition, allow the parties to argue whether Nathan should be removed from father and Nicole's custody, and continue the matter for an exit mediation for placement of Nathan with Kay and ultimately dismiss jurisdiction at the next hearing. Minor's counsel and Kay's counsel indicated they agreed. It appears this was a result of an agreement that occurred off the record, as Nicole's counsel indicated the agreement was for exit mediation and not specifically placement with Kay. Counsel for the department responded, "Yes, the exit mediation would be due to placing [Nathan] with the noncustodial [parent] and dismissing. That's why we would have the exit mediation." Counsel for the department further explained the juvenile court would need to "go through disposition," and her understanding was that the parties "were arguing removal from the care of the custodial parent today, but the child has been placed on extended visit, so it would be placement with [Kay]." Counsel for Nicole responded, "I'll agree to that."

9.

After hearing arguments on the jurisdictional issues, the court elevated Nicole to presumed mother status and found it would be detrimental to Nathan not to do so. The court arraigned the parents on the first amended petition and found the allegations pertaining to father and Nicole true and that Nathan was described by section 300, subdivision (b). The court noted there was "extensive history" of domestic violence between father and Nicole and the "pattern of domestic violence is similar"; "[f]ather's history with substance abuse is extensive"; "[Nicole] ha[d] not been testing negative" for substances; and also noted father and Nicole's behavior of looking for injuries on Nathan during visits indicated they were "using the child … in this thing between the parents." The court found there was a current risk to Nathan based on the parent's "history, specifically [the pattern] of domestic violence, physical in the home, breaking things, under the influence, aggressiveness."

After hearing arguments on whether removal from father and Nicole under section 361, subdivision (c) was appropriate for disposition, the court found Nathan would be at substantial risk if returned to father and Nicole and there were no reasonable means to protect him without removal and ordered him removed from father and Nicole's physical custody. The court noted again the history of domestic violence and that in addition to physical harm, there is risk of "emotional detriment and harm" to Nathan due to ongoing domestic violence. The court further noted, "This is an intact couple. They're working their services, but I cannot ignore the positive tests and there is substance abuse in the home or has been. The previous incidents where the Department was not invited in to make sure the child was safe, I can't ignore that. I can't ignore the problem with visitation and failure to follow direction." The court set the matter for an exit mediation.

On August 30, 2022, a mediation was held with no agreement; the department prepared a recommendation for custody orders. The recommendation was for Kay to be awarded sole legal custody, with Nathan to reside primarily with her except for weekends, when he would be with father and Nicole.

Following the mediation, a hearing was held. Counsel for the department informed the court the recommendation was to dismiss the dependency with custody being awarded to Kay. Counsel for Kay and minor both submitted with no further comment. Counsel for Nicole entered an objection "to the request for an order for [Kay] to have sole legal custody," stating "that parents should have joint legal custody so that, because in the best interest of the child, the relationship is very strong with the child, and I believe both parties should have the right to make decisions for the child." Counsel added they were also in "disagreement actually to the disposition and jurisdiction." Father's counsel noted they were "in agreement with dismissal of dependency" and objected to the order granting sole legal custody to Kay, noting they were "[s]ubmitting and not setting for contest."

The court noted it would not be changing its jurisdictional findings and restated its dispositional findings and orders that Nathan was removed from father and Nicole pursuant to section 361, subdivision (c). The court awarded sole physical and legal custody of Nathan to Kay, adopting the child custody orders as prepared by the department and dismissed the dependency.

## DISCUSSION

### I. Sufficiency of the Evidence Supporting the Jurisdictional Findings

A child comes within the jurisdiction of the juvenile court under section 300, subdivision (b)(1) when, as relevant here: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of" "[t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child"; "[t]he willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left"; "[t]he willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment"; and/or

11.

"[t]he inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

To obtain a jurisdictional determination under section 300, subdivision (b)(1), an agency must "prove three elements:  (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness."  (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601.)  A court "need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child."  (*Id*. at p. 602.)  A parent's " ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' "  (*Ibid*.)  However, " '[t]o establish a defined risk of harm at the time of the hearing, there "must be some reason beyond mere speculation to believe the alleged conduct will recur." ' "  (*Ibid*.)

In reviewing the sufficiency of the evidence supporting the jurisdictional findings, " 'we determine if substantial evidence, contradicted or uncontradicted, supports them.' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  " ' "[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' "  (*Ibid*.)  " ' "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' "  (*Ibid*.)  We must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate.  (*Ibid*.)

Both father and Nicole contend the jurisdictional findings were error because there was not substantial evidence to demonstrate a *current* risk to Nathan at the time of the jurisdiction hearing based on the services they had participated in, father's negative drug

tests, as well as the fact there had been no documented domestic violence incidents since the ones that led to the proceedings. We disagree.

While we commend both parents for participating promptly in services, we cannot say the juvenile court was without a basis to conclude there was a current risk to Nathan. First, with regard to domestic violence, existence of past domestic violence is not by itself enough to support jurisdiction; the department must prove domestic violence is "ongoing or likely to continue and that it directly harmed the child physically or placed the child at risk of physical harm." (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717.) In the present case, the evidence was sufficient to support both conclusions. Father's behavior included throwing things around the home while Nathan was present and therefore presented a risk to Nathan's physical safety. Though there had been no documented domestic violence incidents after the dependency proceedings were initiated, the juvenile court's conclusion that domestic violence was ongoing or likely to continue was reasonable. The juvenile court's conclusion that the history of domestic violence was "extensive" and involved a pattern of behavior was amply supported by the record. Father had two domestic violence convictions from 2016, while he was married to Nicole, which occurred close together. The couple then went years without documented incidents, but there was another incident in July 2021, after which father and Nicole did not allow the department to investigate to ensure Nathan's safety. Approximately six months later, there were the two back-to-back incidents in December 2021, which gave rise to the dependency proceedings. This pattern gives rise to the conclusion that the absence of domestic violence incidents in the context of this couple's history did not mean the issue was ameliorated. Though father had started domestic violence classes, and Nicole had taken an online domestic violence course, father had not completed his program, and Nicole had a history of not cooperating with law enforcement and the department when it came to her relationship with father. She also retracted many of her initial disclosures regarding father and minimized the domestic violence after the

13.

proceedings were initiated. The evidence of the course work father and Nicole had completed did not compel the juvenile court to find the risk no longer existed based on this record. Based on the foregoing, the court could reasonably conclude Nathan was still at physical risk due to the domestic violence in the home.

In addition, with regard to father's drug use, law enforcement and the department's observations of father being incoherent while under the influence, Nicole's statements to law enforcement suggesting he was unable to care for Nathan while under the influence, Nathan's young age, and father's admission he used several times per day all support the court's finding that father's substance use posed a risk to Nathan's physical safety. The court could reasonably conclude the risk still existed at the time of the hearing because though father had demonstrated months of sobriety and completed a substance abuse program, which we also commend, this short period was not significant in the context of father's long history with substance abuse as evidenced by his prior drug-related criminal convictions dating back to 2014.

For the foregoing reasons, viewed in their totality, we conclude the juvenile court's jurisdictional findings were supported by sufficient evidence.

## II. Sufficiency of the Evidence Supporting Findings Underlying the Removal Order

A dependent child shall not be taken from the physical custody of his or her custodial parents unless the juvenile court finds clear and convincing evidence that, as relevant here: "[(1) t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and [(2)] there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's … physical custody." (§ 361, subd. (c)(1).)

In determining whether substantial evidence supports the juvenile court's dispositional findings, we must account for the clear and convincing standard of proof.

14.

(*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)  The question before us is "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Ibid*.)  As with our review of the court's jurisdictional findings, we "view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id*. at pp. 1011–1012.)

Father, joined by Nicole, first argue that the evidence did not support there was a risk of substantial danger if Nathan were to be returned to father and Nicole's home.  We disagree.

When determining whether a child will be in substantial danger if permitted to remain in the parent's physical custody, the juvenile court must consider, "not only the parent's past conduct, but also current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re I.R.* (2021) 61 Cal.App.5th 510, 520.)

For the same reasons we find the court's jurisdictional findings were supported by sufficient evidence, we conclude the court's findings of substantial danger were supported by sufficient evidence, bearing in mind the clear and convincing standard.

Father's reliance on *In re Basilio T.* (1992) 4 Cal.App.4th 155 does not persuade us to reach a different conclusion.  In *Basilio T.*, dependency jurisdiction was taken over the minor children, and they were removed from the parents' custody due to domestic violence in the home.  The parents challenged the jurisdictional and dispositional findings and orders. (*Id*. at pp. 160–161.)  The dependency proceedings were initiated due to two incidents of domestic violence reported to the police, and the social study report related "a history of confrontations between [the parents], some of which were violent and which apparently involved the minors." (*Id*. at pp. 168–169.)  The confrontations were not described "in great detail," but the court found them sufficient "to show a pattern of

15.

violent behavior that has not been corrected." (*Id*. at p. 169.) The *Basilio T.* court concluded the evidence was sufficient to uphold the jurisdictional findings. (*Ibid*.) The court, however, reversed the removal order, reasoning that the evidence could not satisfy the clear and convincing standard required to find substantial danger to the minors if returned to their parents. (*Id*. at pp. 170–171.) In evaluating the claim, the court noted that besides the two incidents reported to law enforcement, the evidence of the history of domestic violence between the couple were reports from neighbors and interviews of the children. The court noted the neighbors' statements "were at least double hearsay and contradicted by a live witness, whom the trial court explicitly found credible"; one of the children was found not qualified to testify, and the other child "basically recanted much of what he told the social worker." (*Id*. at p. 171.) According to the *Basilio T.* court, "[t]hat le[ft] the two incidents of domestic violence in which the police were called." The court noted these incidents did not involve the children directly and there was no evidence the children were physically harmed. The court concluded the evidence was not sufficient to uphold the finding of substantial danger. (*Ibid*.)

*Basilio T.* is readily distinguishable from the present case. In *Basilio T.*, the evidence that the parents engaged in domestic violence, other than the two incidents which led to the dependency proceeding, were contradicted double hearsay statements and unreliable child interviews. In contrast, in the present case, as we have stated, there was documented history of domestic violence, such as father's criminal history and a previous child welfare referral. The quality of evidence in the present case is stronger than that in *Basilio T.* and in our view satisfies not only the lower burden required for the jurisdictional findings but the higher burden required for the dispositional findings.

Father, joined by Nicole, also argues that the court failed to determine whether there were reasonable means to protect Nathan without removal from the home. Suggestions provided by father that he contends the court did not but should have considered include: "(1) a DSS approved relative remain in the home with [father],

16.

(2) [father] continue to comply with his random drug testing, (3) [father] comply with his case plan generally, and/or (4) [father] comply with frequent (perhaps weekly), unannounced home visits."

We conclude the court's finding that no reasonable means could prevent removal was reasonable. Because the primary source of risk to Nathan was the unresolved domestic violence issues—father had not completed his classes, and Nicole had a history of not cooperating with law enforcement or the department with regard to father's outbursts—and further because Nathan was too young to be able to advocate for himself, the court could reasonably conclude alternatives like the ones father suggested were not adequate to protect Nathan.

For the foregoing reasons, we conclude the court's findings underlying its removal order were supported by sufficient evidence.

## III. Propriety of the Exit Order Awarding Sole Legal Custody to Kay

Father contends the court erred by denying him joint legal custody and instead awarding sole legal custody to Kay. He relies on the facts raised in his previous arguments and alleges there was "no reason [father] should not be able to have joint legal custody over [Nathan] together with Kay, and be involved with making decisions concerning his son's educational, religious, travel, extracurricular, and residential activities, as well as decisions relating to his mental and physical health, including medical and dental care." We disagree.

If the juvenile court terminates its jurisdiction over a dependent minor, it may issue an order determining the custody of, or visitation with, the child. (§ 362.4, subd. (a).) In making an order under section 362.4, subdivision (a) or "exit order," the juvenile court's primary consideration is the best interests of the child. (*In re J.M.* (2023) 89 Cal.App.5th 95, 112.) In determining what is in the child's best interests, the court must consider the totality of the circumstances. (*In re Chantal S.* (1996) 13 Cal.4th 196, 201.)

17.

Because juvenile dependency proceedings arise when children are subject to or at risk of abuse or neglect, custody orders are not made "until the child has been declared a dependent of the court and in many cases, such as this one, the child has been removed from the parents upon clear and convincing evidence of danger." "The issue of the parents' ability to protect and care for the child is the central issue[, and t]he presumption of parental fitness that underlies custody law in the family court just does not apply to dependency cases." (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712; accord *In re Chantal S.*, *supra*, 13 Cal.4th at p. 206.) "Rather the juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions." (*In re Jennifer R.*, at p. 712.)

The juvenile court has "broad discretion" to make exit orders. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.) We review the court's order for abuse of discretion and "may not disturb the order unless the court ' " 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].' " ' " (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.)

We find no abuse of discretion. The juvenile court had found by clear and convincing evidence that father posed a substantial danger to Nathan, which we have found was supported by substantial evidence. In addition, there was evidence throughout the proceedings that father had animosity towards Kay, like using his visitation time to search for marks or bruises on Nathan, which the court could reasonably conclude would hinder their ability to make joint decisions about Nathan and was not in Nathan's best interests.

As the department points out, father is in no way precluded from seeking joint custody in family court. We note that in this appeal we are tasked with evaluating only the question of whether the juvenile court abused its discretion, considering the circumstances that existed at the time of the exit hearing. We express absolutely no

opinion on what the outcome of any future requests for change in custody in family court should be.

Finally, Nicole, joined by father, additionally contends that the court should have retained jurisdiction over Nathan and ordered reunification services to father and Nicole so that they could reunify with him. We conclude this argument is forfeited. Failure to object generally forfeits a parent's right to pursue the issue on appeal. (*In re T.G.* (2015) 242 Cal.App.4th 976, 984.) The purpose of the forfeiture rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Here, the record demonstrates the parties were in agreement that dependency would be dismissed; the parties agreed there would be an "exit mediation," where the parties met "to dismiss the juvenile dependency action … and to develop a child custody order." Nicole did not object to the dismissal of jurisdiction below or request any alternative to dismissal of jurisdiction; her only objection at the exit hearing was to the recommendation that Kay be awarded sole legal custody as well as somewhat vague objections to "jurisdiction and disposition," which had already been litigated and the court deemed untimely. Father expressly indicated he was not objecting to dismissal of jurisdiction. As no party requested the trial court to retain jurisdiction, we deem Nicole's claim on appeal that the court erred by not doing so forfeited and reject it.

Even if we were to find Nicole's claim properly before us, we would reject it on its merits; the court's decision to terminate jurisdiction was reasonable. There was no evidence of risk to Nathan's physical or emotional wellbeing in Kay's care, where he had been for eight months with bi-weekly visits from the department. Besides the fact that all parties agreed with jurisdiction being terminated, the evidence before the court was that Nathan was physically safe in Kay's home, he had transitioned smoothly to her care and was happy and doing well, and the exit orders accounted for Nathan's relationship with father and Nicole as he would be spending weekends with them.

For the foregoing reasons, we conclude the court did not err by dismissing jurisdiction and issuing an exit order awarding Kay sole legal custody.

## **DISPOSITION**

The court's August 30, 2022 dispositional order and exit custody order are affirmed.

DE SANTOS, J.

WE CONCUR:


PEÑA, Acting P. J.


SMITH, J.